# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA GREEN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM H. COSBY, JR., <br><br> Defendant. | Misc. No. 16-mc-00002-AB <br> (Brody, J.) |

## WILLIAM H. COSBY, JR.'S SUPPLEMENTAL BRIEF IN SUPPORT OF
## HIS MOTION TO QUASH SUBPOENA

## INTRODUCTION

Plaintiffs have subpoenaed the case file of Ms. Dolores Troiani, Esq., attorney for the plaintiff in *Andrea Constand v. William H. Cosby, Jr.*, Civ. Act. No. 05-1099 (the "*Constand* Litigation"). In so doing, Plaintiffs have requested materials specifically protected under the Confidential Settlement Agreement ("CSA") entered into by the parties to the *Constand* litigation. These confidential materials should remain protected not only to uphold the bargained for benefit that materially induced the parties to enter the CSA, but because the materials are presently at the center of a criminal action brought against Mr. Cosby. Plaintiffs intend to publicize this highly sensitive information, which will potentially cause immediate harm to Mr. Cosby and impact his ability to defend himself in the ongoing civil and criminal litigations. These concerns greatly outweigh the relevance of the materials sought.

Contrary to Plaintiffs' argument, Federal Rule of Evidence 415 does not make Ms. Troiani's *Constand* case file relevant to their claims. Plaintiffs have alleged claims of defamation for statements made by Mr. Cosby's representatives, *not* claims of sexual assault against Mr. Cosby. Because Plaintiffs' claims are not for sexual assault, Rule 415 cannot operate to make evidence of other alleged sexual assaults by Mr. Cosby relevant. Plaintiffs' additional argument that Ms. Troiani's *Constand* case file is relevant to provide evidence in defense of Mr. Cosby's counterclaims also fails, because Plaintiffs are seeking information they previously provided to Ms. Troiani. Plaintiffs do not need Ms. Troiani's entire case file to obtain information they already possess.

The Subpoena to Ms. Troiani should be quashed or significantly limited to relevant information. Due to confidentiality concerns, the production of any materials thereunder should be conditioned on the entry of a protective order and Mr. Cosby afforded the opportunity to review and, if necessary, object to the disclosure of any materials that are to be produced.

**ADDITIONAL BACKGROUND**

***The Constand Criminal Investigation.*** Over a decade ago, the District Attorney of Montgomery County, Pennsylvania, opened a criminal investigation into sexual assault allegations raised by Ms. Constand against Mr. Cosby. Ultimately, believing that there was not sufficient evidence to indict him, the District Attorney entered an agreement with Mr. Cosby, promising never to prosecute him with respect to Ms. Constand's allegations in exchange for inducing Mr. Cosby to testify fully in Ms. Constand's civil litigation. *See Commonwealth of Pennsylvania v. William H. Cosby, Jr.*, Petition for Writ of Habeas Corpus and Motion to Disqualify the Montgomery County District Attorney's Office ("Habeas Petition"), January 11, 2016, at 8. Three weeks later, on March 8, 2005, Ms. Constand instituted the *Constand* litigation against Mr. Cosby asserting claims for sexual assault. *See Constand v. Cosby*, Civ. Act. No. 05-1099, E.D. Pa., Complaint. In reliance on his agreement with the District Attorney, Mr. Cosby testified in the *Constand* litigation without invocation of his Constitutional rights against self-incrimination. See Habeas Petition at 9. Nonetheless, ten years later, on December 30, 2015, the newly elected District Attorney of Montgomery County brought charges against Mr. Cosby based upon Mr. Cosby's testimony in the *Constand* litigation. *Id.* at 6.

***The Constand Litigation Settlement Agreement.*** After Mr. Cosby's deposition, the *Constand* litigation was dismissed upon the execution of the CSA between the parties and their counsel. As described at length in Mr. Cosby's opening brief on this matter, the CSA requires each party to maintain the ongoing confidentiality of the materials and information gathered and generated in the course of the *Constand* litigation. Confidentiality was a material inducement to the parties to enter into the CSA. CSA, at ¶16.

***The Present Litigation.*** Presently before the Court is a Motion to Quash a Subpoena requesting Ms. Troiani's entire case file from the *Constand* litigation. Per the terms of the CSA, Ms. Troiani is prohibited from producing the subpoenaed materials without court order. See

CSA, ¶ 14C.  The Subpoena was served by Plaintiffs in the action *Green, et al. v. Cosby*, Civ. Act. No. 14-30211 (the "*Green* litigation") in the District of Massachusetts.  The third amended complaint in *Green* raises claims for defamation and false light stemming from statements made by Mr. Cosby's representatives denying that Mr. Cosby had assaulted the *Green* Plaintiffs in separate incidents occurring between the 1970s and the early 1990s.  No plaintiff in the *Green* litigation was a plaintiff in the *Constand* litigation.[1]

After an initial round of briefing and a conference with the Court, we have been asked to provide additional briefing regarding the power of the CSA to prohibit discovery by third parties, and whether Federal Rule of Evidence 415 can establish the relevance of the materials subpoenaed.  As described below, neither of these questions is dispositive of the Motion to Quash, but rather must be balanced by the Court among other factors to determine if the discovery is warranted.

## ARGUMENT

Mr. Cosby has asked the Court to provide relief in one of two ways: (1) to quash the subpoena to Ms. Troiani under Federal Rule of Civil Procedure 45(d)(3)(A); or (2) to enter a protective order under Federal Rule of Civil Procedure 26(c)(1) limiting the scope of the Subpoena to prohibit the discovery of certain information.  Whether the Court applies Rule 26 or Rule 45, it must balance several competing factors: the "(1) relevance, (2) need, (3) confidentiality, and (4) harm," of the information sought.  *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).  "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."  *Id.*; see also Fed.R.Civ.P. 26(b)(2)(C).  In this instance, the confidentiality of the information requested,

---

[1] *Cf. Constand v. Cosby*, Civ. Act. No. 05-1099, E.D. Pa., Amended Complaint, Doc. 41, to *Green, et al. v. Cosby*, Civ. Act. No. 14-30211, D. Mass, Third Amended Complaint, Doc. 109.

and the potential harm it could inflict upon Mr. Cosby if it is produced greatly outweigh the relevance of the information and the need that Plaintiffs have for it.

## I. PLAINTIFFS' SUBPOENA SEEKS CONFIDENTIAL INFORMATION THAT IS THE SUBJECT OF A CRIMINAL ACTION, THE DISCOVERY OF WHICH WOULD INFLICT GREAT HARM UPON MR. COSBY

### A. The Materials Sought Are Confidential Under A Binding Settlement Agreement

As discussed in Mr. Cosby's opening brief, many courts have held that "the strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly abrogated" *Flynn v. Portland General Elec. Corp.*, No. 88-cv-455, 1989 WL 112802, at *2 (D. Or. Sept. 21, 1989) (denying discovery of "matters within the scope of the Stipulation and the Settlement Order"); *see also Barbine v. Keystone Quality Transp.*, No. 03-cv-3426, 2004 WL 834709, at *1 (E.D. Pa. Apr. 16, 2004). For this reason Courts specifically weigh the existence of confidentiality concerns in the balance of granting a motion to quash or motion for protective order. The fact that a confidential settlement agreement exists and what it protects, plays an important role in in the balancing of interests – relevance, need, and harm – as examined under Rule 45. *See Flynn*, 1989 WL 112802, at *2, Mannington Mills, Inc., 206 F.R.D. at 529.

The CSA at issue here, and its specific confidentiality provisions were a "material inducement" for the parties to the *Constand* litigation achieving settlement. CSA, at ¶16. The confidentiality provisions protect materials that include but are not limited to:

1. the events or allegations upon which the [*Constand* litigation] was based;

2. allegations made about [Mr. Cosby] or [Andrea Constand] by other persons;

3. the information that they learned during the criminal investigation of [Mr. Cosby] or discovery in the [*Constand* litigation], including, but not limited to, allegations made by other women concerning [Mr. Cosby], the content of the Montgomery County District Attorney's and the Cheltenham Township Police Department's files from the criminal investigation of [Mr. Cosby], and the content of [Mr. Cosby] and [Andrea Constand]'s depositions in the [*Constand* litigation], and

5

>information about [Mr. Cosby] and/or [Andrea Constand] gathered by their agents.

CSA, at ¶14 A.

In this case, Plaintiffs have subpoenaed Mr. Troiani's entire *Constand* case file.[2] Notwithstanding the broad scope of the Subpoena, Plaintiffs have stated that, while they do not seek the CSA itself, they seek information about themselves or other potential witnesses against Mr. Cosby that can be found in the file.  *See* Plaintiffs' Opposition, DKT #24, at 9.  Either way, it is difficult, if not impossible to articulate materials that could be found in the file that would somehow fall outside of the materials protected by the CSA as enumerated above.  Accordingly, absent a court order, Ms. Troiani cannot produce her entire *Constand* case file, or any lesser subset of materials, without violating the CSA.  *See* CSA, at ¶14 C.

>B.    The Materials Sought Are Subject Of A Criminal Suit Against Mr. Cosby And Their Production Could Interfere With His Defense

In addition to the confidentiality of the materials at issue, the Court must also consider the effect that the requested discovery will have upon the moving party.  This harm, "however, need be no more than 'embarrassment'; thus, a party need not establish a monetizable injury." McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 193 (M.D. Pa. 2011) (*quoting Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000)).  Here, Mr. Cosby's harm far surpasses mere embarrassment.

The materials subpoenaed by Plaintiffs directly relate to the ongoing criminal action brought by the Montgomery County District Attorney against Mr. Cosby.  Mr. Cosby believes that Ms. Troiani's *Constand* case file has materials from the Montgomery County District Attorney's Office and the Cheltenham Township Police Department from the original 2004 criminal investigation into Ms. Constand's allegations against him.  In addition, the file contains

---

[2] The Subpoena specifically excepts from its scope attorney-client privileged or attorney work-product materials, accordingly reference herein to Ms. Troiani's *Constand* case file is made with such exception.

6

Mr. Cosby's deposition transcript from the *Constand* litigation, the testimony from which was the basis of his 2015 criminal indictment. Releasing Ms. Troiani's *Constand* case file to Plaintiffs at this time will provide them with sensitive materials that could greatly impact the prosecution and defense of Mr. Cosby's criminal case.

Indeed, Plaintiffs have already made clear the strategy of litigating their claims against Mr. Cosby in the public forum. Plaintiffs have alerted the media in advance of serving deposition notices and subpoenas and have stated that the media "should be able to review [information produced in pretrial discovery] and reach their own conclusions," and that "the public should know **all** of the material facts surrounding this case." *See Green*, Plaintiffs' Opp. To William H. Cosby Jr.'s Mtn. To Enter The Proposed Confidentiality Agreement And Protective Order As Well As The Proposed ESI Protocol, Dkt. 148 at 7 (emphasis in the original). Allowing Plaintiffs to use information from the *Constand* litigation to bolster public support against Mr. Cosby will have a serious effect on his ability to defend himself and obtain an impartial jury in the Montgomery County criminal action that pertains to those very events. *See Cipollone v. Liggett Grp., Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986) (finding that a protective order is warranted where public embarrassment will be of serious consequence).

In addition, third parties to the *Constand* litigation may also be harmed by the release of the confidential materials sought by Plaintiffs' Subpoena. Ms. Troiani had spoken with certain individuals who had interacted with Mr. Cosby and might serve as witnesses in the *Constand* litigation. Information regarding these individuals can be found in the *Constand* case file. Some of these individuals came forward as "Doe" witnesses, and some potentially did not participate at all. If these individuals have still not come forward publicly, despite the allegations that have been raised against Mr. Cosby in the time since, Plaintiffs should not be given their identities and sensitive information such that they can be harassed into finally doing so. *See Laxalt v.*

*McClatchy*, 116 F.R.D. 455, 457-58 (D. Nev. 1986) ("The rule is thus well established that nonparties to litigation enjoy greater protection from discovery than normal parties."); *Belk v. Smith*, 2014 WL 4986678, at *2 (M.D.N.C. Oct. 6, 2014) ("There appear to be quite strong considerations indicating that the discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.").

## II.   CONTRARY TO PLAINTIFFS' ARGUMENT, FEDERAL RULE OF EVIDENCE 415 DOES NOT ESTABLISH THE RELEVANCE OF THE MATERIALS SUBPOENAED

In their Opposition to the Motion to Quash, Plaintiffs rely heavily on Federal Rule of Evidence 415, which states that, "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation."  Plaintiffs reason that their defamation claims derive from statements about their allegations that Mr. Cosby sexually assaulted them and, therefore, Rule 415 would allow them to introduce evidence of other alleged sexual assaults committed by Mr. Cosby.  In support of this position, Plaintiffs cite to *Constand*.  This reliance is misplaced.

At issue in *Constand v. Cosby*, 232 F.R.D. 494 (2002), was Ms. Constand's motion to compel discovery responses from Mr. Cosby.  Because the *Constand* action raised claims for sexual assault, the Court compelled Mr. Cosby to respond to discovery requests about his interactions with the "Rule 415 witnesses," who had "identified themselves as alleged victims of sexual assault involving the defendant, and therefore ha[d] voluntarily thrust themselves into the vortex of the case." *Id.* At 498.  However, the Court did not compel Mr. Cosby to respond about alleged sexual misconduct, affairs, or drug use that had occurred more than five years prior to the allegations raised by Ms. Constand. *Id.* at 499.  The Court expressed concern that such discovery would implicate the privacy interests of non-parties "who, unlike the Jane Doe witnesses, have

not voluntarily agreed to provide personal information," as well as the privacy interests of Mr. Cosby. *Id*. In balancing Ms. Constand's right to discovery with these privacy concerns, the Court determined that there must be "outer limits" to the application of Rule 415. *Id.* Based on the facts before it, the Court determined that such limit was five years, as it pertained to non-parties. *Id.*

Unlike the *Constand* litigation, the *Green* litigation does not involve a "claim for relief based on" sexual assault. In the *Green* litigation, Plaintiffs allege that Mr. Cosby's publicist and lawyers – not Mr. Cosby himself – defamed them by publicly denying that Mr. Cosby assaulted them decades ago. One of Mr. Cosby's defenses to these allegations will be the truth of the statements made, *i.e.*, that he did not sexually assault Plaintiffs. It is only as a counter argument to this defense that the question of sexual assault comes into play in the *Green* litigation. No Court has applied Rule 415 so expansively. *See* 23 Fed. Prac. & Proc. Evid. § 5413B (1st ed.) ("It is not clear whether Rule 415 applies when the evidence is being used defensively. . . . the language is not particularly congenial to such use.").

Moreover, even applying *Constand's* "outer limits" of Rule 415 to the present Subpoena would seem to exclude the documents sought by Plaintiffs. Other than the three Plaintiffs from *Green* who have subpoenaed the *Constand* file, the witnesses from the *Constand* litigation-- whether they were Rule 415 witnesses or otherwise unidentified--are non-parties to the *Green* litigation. These witnesses have not chosen "to thrust themselves into the vortex of the case." *Constand*, 232 F.R.D. at 498. Because these *Constand* witnesses are non-parties in *Green*, they are entitled to a greater right to privacy, and should not now be drawn involuntarily into the *Green* litigation. *Id.* Moreover, the sexual assault allegations in *Green* are all alleged to have occurred decades before the allegations in *Constand*, with the earliest allegation dating back to the 1960s. *See Green, et al. v. Cosby*, Civ. Act. No. 14-30211, D. Mass, Third Amended

Complaint, ¶¶69, 90.  Under *Constand's* reasoning, other such similar allegations would be outside the limits of appropriate discovery for non-parties.  *Constand,* 232 F.R.D. at 499.

Plaintiffs also argue that, if there are notes of interviews with them in Ms. Troiani's files, these notes are relevant to defend against Mr. Cosby's counterclaims that Plaintiffs fabricated their allegations against him.  However, they do not need Ms. Troiani's entire *Constand* file for this purpose; they can give their own testimony if they consulted with Ms. Troiani twelve years ago.  In any event, such interview notes would most likely be Ms. Troiani's work product, and thus outside the scope of Plaintiffs' subpoena.

### III.  THE COURT SHOULD ENTER A PROTECTIVE ORDER IF PLAINTIFFS' SUBPOENA IS NOT QUASHED IN ITS ENTIRETY

If the Subpoena to Ms. Troiani is not quashed in its entirety, the Court should nonetheless limit its scope to matters specifically relevant to the *Green* litigation, *i.e.*, those materials that regard the *Green* Plaintiffs.  As conceded by Plaintiffs, the CSA is without relevance to the *Green* litigation and should be carved out of any order compelling production.  With regard to any production the Court does order, Mr. Cosby respectfully requests it be conditioned upon the execution and entry of a protective order so that Plaintiffs do not publish prejudicial materials to the media.  Mr. Cosby also requests that his attorneys – who are sensitive to his privacy concerns and the confidentiality of the information in question – be permitted to review such production in advance to ensure that it is indeed responsive with the Court's Order.

### CONCLUSION

For the foregoing reasons, the Court should grant Mr. Cosby's motion to quash the December 2, 2015 Subpoena served on Dolores Troiani, Esq., or, in the alternative, limit the scope of the Subpoena to include only those portions of Ms. Troiani's *Constand* case file, if any, that relate to Plaintiffs in the *Green* litigation.  In addition, any production should be conditioned on the execution of a confidentiality agreement and on the issuance of a protective order in the

Green litigation; and Mr. Cosby's attorneys should have the opportunity to review any proposed production before it is made.

                        **Respectfully submitted,**

By:   <u>s/ /s/ Patrick J. O'Connor</u>
        **Patrick J. O'Connor**
        **George M. Gowen**
        **Matthew Bleich**
        **COZEN O'CONNOR**
        **1650 Market St.**
        **Philadelphia, PA 19103**
        **Telephone: (215) 665-2000**
        **Fax: (215) 989-4174**

        **Marshall M. Searcy III** (*pro hac vice* **pending**)
        **QUINN EMANUEL URQUHART &**
        **SULLIVAN, LLP**
        **865 South Figueroa Street, 10th Floor**
        **Los Angeles, CA 90017-2543**
        **Telephone: (213) 443 3000**

        *Attorneys for the Defendant William H. Cosby*

**Dated:  February 5, 2016**

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2016, I caused to be filed through the Court's CM/ECF system the foregoing Defendant William H. Cosby Jr.'s Supplemental Brief in Support of His Motion to Quash Subpoena, and thereby caused all counsel of record to be served by electronic service.

                                                   */s/ Patrick J. O'Connor*
                                                  Patrick. O'Connor