IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMARA GREEN, et al., | : | |
|     Plaintiffs, | : | MISCELLANEOUS ACTION |
| | : | No. 16-00002 |
| v. | : | |
| | : | |
| WILLIAM H. COSBY, JR., | : | |
|     Defendant. | : | |

**March 21, 2016**                                                                                               **Anita B. Brody, J.**

### MEMORANDUM

    Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie brought suit against Defendant William H. Cosby, Jr. in the United States District Court for the District of Massachusetts ("Massachusetts District Court") for alleged defamation, invasion of privacy (false light), and intentional infliction of emotional distress ("*Green* Litigation"). Third Am. Compl., *Green v. Cosby*, No. 14-30211, (D. Mass. Nov. 13, 2015), ECF No. 109 [hereinafter Third. Am. Compl.]. On December 2, 2015, Plaintiffs served a subpoena on attorney Dolores Troiani to produce her case file in the *Constand* Litigation.[1] Cosby moves this Court to quash the subpoena.[2] Intervenor American Media, Inc. ("AMI") also moves this Court to quash or modify the subpoena. For the reasons set forth below, I will grant in part and deny in part Cosby's motion to quash the subpoena, and I will grant AMI's motion to quash or modify the subpoena.

---

[1] *See infra* Section I.A.

[2] Although the Massachusetts District Court issued the subpoena, Plaintiffs served the subpoena on Troiani in Philadelphia, Pennsylvania. The motion to quash is properly filed in this Court because "the court for the district where compliance is required must quash or modify a subpoena." Fed. R. Civ. P. 45(d)(3)(A).

1

**I. BACKGROUND**

**A. The *Constand* Litigation and Criminal Prosecution**

In 2005, attorney Troiani represented Andrea Constand who filed suit against Cosby for alleged battery, assault, intentional and negligent infliction of emotional distress, defamation/defamation per se, and false light/invasion of privacy in the United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania"). Compl., *Constand v. Cosby*, No. 05-1099 (E.D. Pa. Mar. 8, 2005), ECF No. 1. In that action, Constand alleged that Cosby drugged her and then sexually assaulted her. *Id*. After Constand reported the sexual assault, Cosby allegedly made false statements to the media about Constand. *Id.*

In 2006, Constand filed another suit in the Eastern District of Pennsylvania against The National Enquirer (a media brand owned and operated by Intervenor AMI) and Martin Singer (Cosby's attorney) for defamation/defamation per se and false light/invasion of privacy. Compl., *Constand v. Singer*, No. 06-483 (E.D. Pa. Feb. 1, 2006), ECF No. 1. Constand's two lawsuits were consolidated before Judge Eduardo C. Robreno (collectively, the "*Constand* Litigation"). *Id.*, ECF No. 30.

During the course of the *Constand* Litigation, the parties conducted discovery regarding other women's accusations that Cosby had sexually assaulted them. *See Constand v. Cosby*, 232 F.R.D. 494 (E.D. Pa. 2006). On November 4, 2005, the *Constand* Court entered an interim order ("Sealing Order") temporarily sealing several documents on the docket, pending a full hearing on whether the documents should be permanently sealed.[3] Case Mgmt. Order 2, *Constand v. Cosby*, No. 05-1099 (E.D. Pa. Nov. 4, 2005), ECF No. 47; *see also Constand v. Cosby*, 112 F. Supp. 3d

---

[3] Although the *Constand* Court entered the Sealing Order prior to consolidation of Constand's two lawsuits, the *Constand* Court later entered an order affirming that the Sealing Order applied to the entire *Constand* Litigation. *See* Stipulation of Confidentiality, *Constand v. Cosby*, No. 05-1099 (E.D. Pa. July13, 2006), ECF No. 94.

308, 310 (E.D. Pa. 2015). Before the *Constand* Court ruled on whether to permanently seal the documents, the parties to the *Constand* Litigation settled. *Constand v. Cosby*, 112 F. Supp. 3d at 310.

In October 2006, the parties to the *Constand* Litigation entered into the Confidential Settlement Agreement and General Release ("CSA"). The confidentiality provisions of the CSA provide, in relevant part:

> CONSTAND, COSBY, SINGER, AMERICAN MEDIA, GIANNA CONSTAND, ANDREW CONSTAND, and their undersigned counsel acknowledge COSBY's, SINGER's, and AMERICAN MEDIA's interests in not permitting others (a) to know (i) the outcome or the underlying facts of the LITIGATION, or (ii) the terms of this Confidential Settlement Agreement and General Release, (b) to learn more about CONSTAND's allegations or their defenses other than what is already a matter of public record, via their pleadings, or published press reports (c) to learn the information gathered and generated in the course of discovery in the LITIGATION, or (d) to gain access to the motions and briefs currently filed under seal in the LITIGATION. They also acknowledge that CONSTAND, COSBY, SINGER, and AMERICAN MEDIA enter into this Confidential Settlement Agreement and General Release to protect those interests. Accordingly . . . :
>
> A. CONSTAND, COSBY, SINGER, AMERICAN MEDIA, GIANNA CONSTAND, ANDREW CONSTAND, and their undersigned counsel agree, as of August 23, 2006, not to disclose to anyone, via written or oral communication or by disclosing a document, in private or public, any aspect of this LITIGATION, including, but not limited to:
>
>    1. the events or allegations upon which the LITIGATION was based;
>
>    2. allegations made about COSBY or CONSTAND by other persons;
>
>    3. the information that they learned during the criminal investigation of COSBY or discovery in the LITIGATION, including, but not limited to, allegations made by other women concerning COSBY, the content of the Montgomery County District Attorney's and the Cheltenham Township Police Department's files from the criminal investigation of COSBY, and the content of COSBY's and CONSTAND's depositions in the LITIGATION, and information about COSBY or CONSTAND gathered by their agents.

* * *

C.  CONSTAND, COSBY, SINGER, AMERICAN MEDIA, GIANNA CONSTAND, ANDREW CONSTAND, and their undersigned counsel agree not to disclose this Confidential Settlement Agreement and General Release or any of its terms and condition . . . , unless such disclosure is . . . in response to a valid subpoena issued by a court of competent jurisdiction.

* * *

The confidentiality provisions . . . are a material inducement to each of the parties hereto to enter this Confidential Settlement Agreement and General Release, and each of the parties and the party's undersigned counsel acknowledges that in entering this Confidential Settlement Agreement and General Release, each party is expressly relying [on] each other party's agreement to abide by the confidentiality provisions. . . .

Def.'s Mot. Quash Ex. 2 ¶ 3.

Almost nine years after the parties had entered into the CSA, the Associated Press moved to intervene in the *Constand* Litigation and requested that all of the documents on the docket be unsealed and made available to the public. *Constand v. Cosby*, 112 F. Supp. 3d at 309-10. On July 6, 2015, the *Constand* Court granted the Associated Press's motion and unsealed the documents. *Id.* at 319. First, the court examined the November 4, 2005 Sealing Order that sealed the documents and concluded that "[t]he Documents are not technically sealed at this time, given that the Court initially sealed them temporarily in its efforts to resolve the outstanding discovery disputes, and indicated that the temporary seal would lapse if not definitively extended." *Id.* at 314 n.8. The *Constand* Court then refused to keep the documents sealed because Cosby had not demonstrated good cause for a protective order. *Id.* at 319. Cosby appealed the *Constand* Court's decision to unseal the documents. The appeal is currently pending in the Third Circuit. *See Constand v. Cosby*, No. 15-2797 (3d Cir. July 29, 2015).

Furthermore, on December 30, 2015, Cosby was criminally charged with aggravated indecent assault in Montgomery County, Pennsylvania for his alleged sexual assault of Constand. *See Commonwealth v. William Henry Cosby, Jr.*, http://www.montcopa.org/commonwealthvs cosby (last visited Mar. 9, 2016).

**B. The *Green* Litigation**

On December 10, 2014, Plaintiff Green initiated the *Green* Litigation by filing a complaint against Cosby in the Massachusetts District Court. Compl., *Green v. Cosby*, No. 14-30211, (D. Mass. Dec. 10, 2014), ECF No. 1. On November 13, 2015, the current operative complaint—the Third Amended Complaint—was filed on behalf of Plaintiffs Green, Serignese, Traitz, Moritz, Bowman, Tarshis, and Leslie, asserting claims against Cosby for alleged defamation, invasion of privacy (false light), and intentional infliction of emotional distress. Third Am. Compl. In the Third Amended Complaint, Plaintiffs allege that Cosby sexually assaulted them. *Id.* Additionally, the majority of Plaintiffs allege that Cosby drugged them in order to carry out the assault. Plaintiffs made public statements about these assaults, and allege that Cosby defamed them by denying that he sexually assaulted them. *Id.* Additionally, Plaintiffs allege that Cosby's defamatory statements cast them in a false light and intentionally inflicted emotion distress on them. *Id.*

In December 2015, Cosby filed counterclaims to Plaintiffs' Third Amended Complaint. *See* Def.'s Answer, Affirmative Defenses, and Counterclaims to Pls.' Third Am. Compl., *Green v. Cosby*, No. 14-30211, (D. Mass. Dec. 14, 2015), ECF No. 121 at 77-89 [hereinafter Def.'s Counterclaims]. Cosby filed counterclaims against each Plaintiff for alleged defamation per se, defamation, tortious interference, and intentional infliction of emotional distress. *Id.* at 83-88. In the counterclaims, Cosby alleges that "each [Plaintiff] engaged in a campaign to assassinate

Mr. Cosby's reputation and character by willfully, maliciously, and falsely accusing Mr. Cosby of multi-decade-old purported sexual misconduct in an opportunistic attempt to extract financial gain from their allegations." *Id.* at 79-80 ¶ 17. Cosby supports his counterclaims with factual allegations outlining the individual actions taken by each Plaintiff to damage his reputation and cause him harm. *Id.* at 80-82 ¶¶ 18-26.

On December 2, 2015, Plaintiffs served a subpoena on Troiani, the attorney who represented Constand in the *Constand* Litigation. The subpoena commanded Troiani to produce:

> Your entire case file for the case of *Constand v. Cosby*, U.S. District for the Eastern District of Pennsylvania, Case No. 2:05-cv-01099, excluding attorney-client communications and attorney work-product.

Def.'s Mot. Quash Ex. 1. Troiani has not filed any objection to production of her case file. Cosby and AMI filed the current motions to quash the subpoena.[4]

## II. LEGAL STANDARD

While Federal Rule of Civil Procedure 45(d)(3) describes when a court is required or permitted to quash or modify a subpoena, Federal Rule of Civil Procedure 26(b)(1) delineates the general scope of discovery. "A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed .R .Civ. P. 26(b)(1)." *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007); *accord Frank v. Honeywell Int'l Inc.*, No. 15-MC-172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). "The serve-and-volley of the federal discovery rules govern the resolution of a motion to quash." *In re Domestic Drywall*, 300 F.R.D. at 239 (internal quotation marks omitted). First, the subpoenaing party must demonstrate that its requests fall within the general scope of discovery defined in Rule 26(b)(1). *Id.* Accordingly, the subpoenaing party may only seek "discovery regarding any nonprivileged

---

[4] Technically, AMI moves to quash or modify the subpoena.

matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If the general scope of discovery encompasses the requests of the subpoenaing party then the burden shifts to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena.[5] *See In re Domestic Drywall*, 300 F.R.D. at 239. Rule 45(d)(3)(A) requires a court to quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). Rule 45(d)(3)(B) permits a court to quash or modify a subpoena in other limited circumstances. The burden of the party opposing the subpoena "is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order." *In re Domestic Drywall*, 300 F.R.D. 234 at 239 (internal quotation marks omitted).

**III. COSBY'S MOTION TO QUASH**

In the subpoena, Plaintiffs seek to obtain Troiani's entire case file for the *Constand Litigation*, excluding attorney-client communications and attorney work-product. In response to Cosby's motion to quash, however, Plaintiffs concede that they "do not seek to enforce the subpoena as to the CSA itself—so long as the Court does not otherwise intend to grant the

---

[5] As a general rule, only the subpoenaed party may seek to quash a subpoena. *New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*, No. 98-775, 2000 WL 62315, at *4 (E.D. Pa. Jan. 13, 2000). "However, an exception to this rule exists where a party claims that it has some personal right or privilege with respect to the subject matter sought in the subpoena directed to a nonparty." *New Park*, 2000 WL 62315, at *4; *see also Kida v. EcoWater Sys. LLC*, No. 10-4319, 2011 WL 1883194, at *2 (E.D. Pa. May 17, 2011) (same). No one questions Cosby's or AMI's standing to move to quash the subpoena.

7

Motion to Quash to any extent, on the basis of the CSA." Pl.'s Resp. 8.  I will grant Cosby's motion to quash the subpoena as to the disclosure of the CSA itself because, as discussed below, the existence of the CSA does not influence my decision to grant any other aspect of Cosby's motion to quash.  Cosby moves to quash the remainder of Plaintiffs' subpoena of Troiani's case file on the following grounds: (1) there is no compelling justification for requiring disclosure of these confidential materials; (2) not everything in the case file is relevant to Plaintiffs' action; and (3) production of the file would subject a person to undue burden.

**A. No Compelling Justification**

Cosby argues that Troiani's case file is confidential and should not be disclosed because Plaintiffs have not produced a compelling justification for the disclosure of confidential materials.  Cosby hinges his compelling justification argument on the premise that Troiani's case file is protected from disclosure by the CSA.[6]  However, there is no Federal Rule of Civil Procedure, or legal precedent, that requires Plaintiffs to provide a compelling justification for the disclosure in discovery of materials deemed confidential pursuant to a private settlement agreement.[7]  Even assuming the existence of Cosby's compelling justification requirement for

---

[6] Cosby also argues that Troiani's case file is confidential based of the *Constand* Court's November 4, 2005 Sealing Order.  However, the November 4, 2005 Sealing Order only sealed documents on the docket from public disclosure, and did not dictate the confidentiality of any documents contained in the parties' case files.  Moreover, the *Constand* Court recently unsealed these documents and concluded that the November 4, 2005 Sealing Order has already lapsed. *Constand v. Cosby*, 112 F. Supp. 3d at 314 n.8, 319.  Thus, Cosby cannot rely on the Sealing Order to support his compelling justification argument.

[7] Cosby derives his compelling justification theory from jurisprudence of the Court of Appeals for the Second Circuit holding that court protective orders may only be modified if an "'extraordinary circumstance' or 'compelling need' warrants the requested modification." *F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)); *see also S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001).  The Third Circuit, however, has explicitly rejected the stringent standard for modification of court protective orders adopted by the Second Circuit. *Pansy v. Borough of*

disclosure of confidential materials, and that the CSA prohibits Troiani from disclosing her case file, Cosby's argument would still fail.

The existence of the CSA would not trigger Plaintiffs' burden to produce a compelling justification for disclosure of Troiani's case file because Plaintiffs never agreed to the confidentiality of these materials. An agreement between two parties to keep materials confidential cannot block the disclosure of those materials to third parties in discovery. *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009). "Contracts bind only the parties. No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off." *Id.*; *see also ABF Capital Mgmt. v. Askin Capital*, No. 95-8905, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (explaining that "litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal"); *Tribune Co. v. Purcigliotti*, No. 93-7222, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery."); *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993) ("With respect to contracts containing explicit guarantees of confidentiality, such contracts, of course, cannot bind parties who do not sign them and may have little effect on the capacities of a non-party to discover or introduce at trial the settlement communications covered by the contract." (internal quotation marks omitted)); *but see Flynn v. Portland Gen. Elec. Corp.*, No. 88-455, 1989 WL 112802, at *2 (D. Or. Sept. 21, 1989) (noting "the strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly

---

*Stroudsburg*, 23 F.3d 772, 789-90 (3d Cir. 1994). Moreover, jurisprudence on the standard for modification of court protective orders is inapposite to whether a party needs a compelling justification in order to obtain discovery that is deemed confidential based on a private confidentiality agreement that the party did not agree to or sign.

abrogated"). "[L]itigants' preference for secrecy does not create a legal bar to disclosure." *Gotham*, 580 F.3d at 665. Accordingly, Plaintiffs do not need a compelling justification for disclosure of Troiani's case file.

Even if Plaintiffs were required to produce a compelling justification for disclosure, one readily exists. The public reaps no benefit by allowing settlement agreements to suppress evidence. . . . [T]his concern grows more pressing as additional individuals are harmed by identical or similar action." *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, No. 99-214, 2000 WL 968818, at *5 (N.D. Ill. July 7, 2000) (internal quotation marks omitted). Plaintiffs and Constand allege they were sexually assaulted by Cosby in a similar manner. Additionally, other women accused Cosby of sexual assault and were investigated as potential witnesses in the *Constand* Litigation. "Defendants should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another." *Wendt v. Walden Univ., Inc.*, No. 4-95-467, 1996 WL 84668, at *2 (D. Minn. Jan. 16, 1996); *accord Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-2152, 2001 WL 36086590, at *1 (S.D. Fla. Jan. 31, 2001). Therefore, Cosby cannot prevent Plaintiffs from accessing Troiani's case file on the basis that the CSA protects the file from disclosure.

## B. Relevancy

Federal Rule of Evidence 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Henry v.*

*Morgan's Hotel Grp., Inc.*, No. 15-1789, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (recognizing that the *Oppenheimer* Court's definition of relevance continues to apply after the 2015 amendment to Federal Rule of Civil Procedure 26(b)(1)).

Plaintiffs seek access to Troiani's entire case file, excluding attorney-client communications and attorney work-product. Plaintiffs contend that Troiani's case file contains information about several Plaintiffs and other women who accused Cosby of sexual assault and were investigated as potential witnesses in the *Constand* Litigation. Plaintiffs argue, without opposition from Cosby, that materials in Troiani's case file that pertain directly to them are relevant to their action against Cosby. Thus, all parties agree that materials pertaining to Plaintiffs are relevant. Cosby argues that the subpoena is overbroad because the remainder of the information in Troiani's case file is not relevant as required under Rule 26(b)(1). Plaintiffs contend that materials pertaining to the other women who accused Cosby of sexual assault ("the other witnesses") are relevant.

Plaintiffs argue that, moreover, materials pertaining to the other witnesses are relevant and admissible under Federal Rule of Evidence 415. Rule 415 provides: "In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation." Fed. R. Evid. 415. Plaintiffs contend that materials pertaining to the other witnesses are relevant because Plaintiffs and the other witnesses allege they were sexually assaulted by Cosby,[8] and admissible under Rule 415 because Plaintiffs' suit involves claims for

---

[8] Plaintiffs also argue that materials pertaining to the other witnesses are relevant "in order to rebut [Cosby's] counterclaims, which allege a wide-ranging and malicious conspiracy by [Cosby's] accusers against him." Pl.'s Resp. to Def.'s Supp. Br. 8. Cosby alleges in his counterclaims that "each [Plaintiff] engaged in a campaign to assassinate Mr. Cosby's reputation and character by willfully, maliciously, and falsely accusing Mr. Cosby of multi-decade-old purported sexual misconduct in an opportunistic attempt to extract financial gain from their allegations." Def.'s Counterclaims 79-80 ¶ 17. Although Cosby

11

relief based on alleged sexual assault. Cosby argues that materials pertaining to the other witnesses are neither relevant nor admissible under Rule 415 because Plaintiffs do not bring any claims for sexual assault.

Although Plaintiffs do not bring any claims for sexual assault, they do bring claims for defamation, alleging that Cosby defamed them by making statements that they fabricated their allegations of sexual assault. In the *Green* Litigation, the Massachusetts District Court has already determined that an essential element of defamation is proof of the falsity of Cosby's statements. *Green v. Cosby*, No. 14-30211, 2015 WL 5923553, at *8 (D. Mass. Oct. 9, 2015).[9] Therefore, Plaintiffs must prove that Cosby sexually assaulted them in order to succeed on their defamation claims.

Plaintiffs assert that their defamation claims are "claim[s] for relief based on a party's alleged sexual assault," *id.*, because proof of sexual assault is an essential element of their defamation claims. Whether Rule 415 encompasses Plaintiffs' defamation claims as "claim[s] for relief based on a party's alleged sexual assault," *id.*, is a novel evidentiary question that may control the admissibility of materials pertaining to the other witnesses. At this stage of the

---

brings counterclaims against each Plaintiff, he does not allege a conspiracy and fails to mention the other witnesses. Accordingly, materials pertaining to the other witnesses are not relevant to Plaintiffs' defense against Cosby's counterclaims.

[9] Plaintiffs Green, Traitz, and Serignese were the only Plaintiffs in the *Green* Litigation when the District Court of Massachusetts issued its memorandum. *See Green v. Cosby*, 2015 WL 5923553, at * 1. These Plaintiffs alleged that Cosby published defamatory statements about Green when she was domiciled in Florida, and about Traitz and Serignese when they were domiciled in California. *Id.* at *5. The Massachusetts District Court concluded that the appropriate state law to apply to Plaintiffs' defamation claims is the law of state in which each Plaintiff was domiciled at the time when the alleged publication occurred. *Id.* Consistent with this choice of law analysis, the Massachusetts District Court analyzed defamation under both California and Florida law, and concluded that both states require proof of the following essential elements: "(1) a publication; (2) *that is false*; (3) defamatory, meaning damaging to the good reputation of the person who is the subject of the statement; (4) made by an actor with the requisite degree of fault; (5) is not protected by any privilege; and (6) causes injury to the subject." *Id.* at *8 (emphasis added).

litigation, however, information sought in discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Regardless of admissibility, materials pertaining to the other witnesses are certainly relevant because Plaintiffs and the other witnesses allege they were sexually assaulted by Cosby.

I will deny Cosby's motion to quash the subpoena as to materials pertaining to Plaintiffs and the other witnesses. But, I will grant Cosby's motion to quash the subpoena as to materials pertaining to any other subject matter because Plaintiffs have not met their initial burden of demonstrating that these materials fall within the general scope of discovery.

## C. Undue Burden

Federal Rule of Evidence 45(d)(3)(iv) requires a court to quash or modify a subpoena that "subjects a person to undue burden." Cosby argues that the subpoena subjects him to undue burden because materials in Troiani's case file relate to his ongoing criminal prosecution in Montgomery County and "could greatly impact the prosecution and defense" of his case. Def.'s Supp. Br. 7. Additionally, he argues that the subpoena subjects the other witnesses in the *Constand* Litigation to undue burden because materials related to them in Troiani's case file may cause them harm.

A defendant only has standing to quash a subpoena that is not directed to him if he "has some personal right or privilege with respect to the subject matter sought in the subpoena directed to a nonparty." *New Park*, 2000 WL 62315, at *4; *see also Kida v. EcoWater Sys. LLC*, No. 10-4319, 2011 WL 1883194, at *2 (E.D. Pa. May 17, 2011) (same). Even if a defendant has standing generally to quash a subpoena, he still lacks standing to challenge a third-party subpoena based on undue burden because it is the third-party that faces the burden of production and not the defendant. *Plastic the Movie Ltd. v. John Doe Subscriber Assigned IP Address*

*24.0.105.163*, No. 15-2446, 2015 WL 4715528, at *2 (D.N.J. Aug. 7, 2015); *Malibu Media, LLC v. John Does, 1-18*, No. 12-2095, 2012 WL 8264665, at *7 (E.D. Pa. Sept. 27, 2012); *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *8 (E.D. Pa. July 30, 2012).

Cosby has no standing to quash the subpoena on behalf of the other witnesses because he has articulated no personal right or privilege to protect them from harm caused by production of Troiani's case file. Moreover, Cosby lacks standing to argue that the subpoena subjects him or the other witnesses to undue burden because the burden of production falls solely on Troiani.

Even if Cosby had standing, he has not proven that the subpoena would produce an undue burden on him or the other witnesses. Cosby contends that he and the other witnesses will be burdened by the production of Troiani's case file because sensitive information about them will become public.[10] Cosby fears that disclosure of Troiani's case file may assist the prosecution and impair his ability to get an impartial jury in his Montgomery County criminal case. Cosby will not face undue burden in his criminal case if Troiani produces her case file because, as Cosby acknowledges, "the Montgomery County DA's office has a copy of Ms. Troiani's file." Def.'s 2nd Supp. Br. 4. Furthermore, Cosby's concern about public disclosure is purely speculative and does not support a motion to quash.[11] Thus, Cosby has not demonstrated any undue burden.

---

[10] Cosby also expresses the unsubstantiated concern that Plaintiffs will harass the other witnesses if they learn their identities. Plaintiffs, however, already know the identities of the other witnesses. Pl.'s Resp. to Def.'s Supp. Br. 7.

[11] Cosby's concern over public disclosure does not present a legitimate basis upon which to grant a motion to quash because Cosby may still seek a protective order to prevent public disclosure of materials in Troiani's case filed even if they are disclosed to the parties. In his supplemental brief, Cosby recognizes this remedy and requests a protective order if the motion to quash is not granted in its entirety. However, he never moves for such relief. *See* Def.'s Mot. Quash (moving solely to quash the subpoena pursuant to Federal Rule of Civil Procedure 45). If Cosby wishes to protect materials in Troiani's case file from public disclosure, he should consider filing a motion for a protective order in the Massachusetts District Court where the *Green* Litigation is pending.

**IV. AMI'S MOTION TO QUASH OR MODIFY**

AMI moves to quash or modify the subpoena only to redact any information in Troiani's case file that reflects the settlement amount paid by AMI to Constand under the CSA. The parties do not oppose AMI's motion. Therefore, I will grant AMI's motion to quash or modify the subpoena.

**V. CONCLUSION**

For the reasons set forth above, I will grant in part and deny in part Cosby's motion to quash the subpoena. I will deny Cosby's motion to quash the subpoena as to materials in Troiani's case file pertaining to Plaintiffs and the other witnesses, excluding attorney-client communications and attorney work-product. I will grant Cosby's motion to quash the subpoena as to the CSA itself and materials in Troiani's case filed that do not pertain to Plaintiffs or the other witnesses. Additionally, I will grant AMI's motion to quash or modify the subpoena that seeks only to redact any information in Troiani's case file that reflects the settlement amount paid by AMI to Constand under the CSA. A review of Troiani's entire case file is necessary to determine the portions of the file that should be disclosed consistent with the subpoena and this memorandum. Therefore, Troiani is prohibited from disclosing any portion of the case file until further order of the Court.

                                                    s/Anita B. Brody

                                         _____
                                         ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to: